UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DANIEL SWEAR** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 15-6591** |
| **VERSUS** | * | |
| | * | **SECTION "G"** |
| | * | **NANNETTE JOLIVETTE BROWN** |
| **ARTHUR LAWSON, et al** | * | |
| | * | **MAGISTRATE "1"** |
| * * * * * * * * * * * * * * * * * * * * * * * | | **Hon. Judge Janis van Meerveld** |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT,** through undersigned counsel, come, Arthur Lawson, Scott Vinson, and the City of Gretna, who respectfully submit this *Memorandum in Support of their Motion for Summary Judgment* for the following reasons to wit:

<u>T**ABLE OF** C**ONTENTS**</u>

**Page(s)**

**TABLE OF CONTENTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

**I.**     **Introduction**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.**    **Legal Standard for Summary Judgment**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**III.**   **Law and Argument**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       **A.**     **Defenses as a Matter of Law**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       **B.**     **Fourteenth Amendment Due Process Claim**. . . . . . . . . . . . . . . . . . . . . . 12

       **C.**     **First Amendment Discrimination and Retaliation First Amendment
               Violation**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       **D.**     **State Law Whistleblower Claim**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**IV.**   **Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**V.**    **Certificate of Service**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

<u>T<small>ABLE OF</small> A<small>UTHORITIES</small></u>

**Page(s)**

Rule 56(c) of the Federal Rules of Civil Procedure..................................... 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2501, 91 L.Ed.2d 202 (1986)................................................... 3

*Fontenot v. Upjohn Co.*, 780 F.2d 1190,  1195 (5th Cir. 1986)............................ 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986). ..................................... 3

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)......................... 3

*Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001). ............... 3

*S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA.*, 315 F.3d 533, (5th Cir. 2003)................................................... 4

*Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir. 1999)........................ 4

*Abbot v. Equity Group, Inc.* 2 F.3d 613, 619 (5th Cir. 1993)............................. 4

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ..................................... 4,5

*Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir.(en banc) ............................ 4

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). ........................5,6

*Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009)........................... 5

*Saucier v. Katz*, 533 U.S. 194 (2001)............................................5,6

*Pearson v. Callahan*, 555  U.S. 223, 232 (2009)...................................5,7

*Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)............................. 5

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)................................5,6

**Page(s)**

*Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Batiste v. Theriot*, 458 F. App'x 351, 354 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . .7

*Green v. Tilley*, No. 2:04 CV 0819,  2006 WL 220847, at *3
(W.D. La. Jan. 23, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jefferson v. Corizon Healthcare Providers*, No. 3:12-0988,
2013 WL 6909969,  at *3 (M.D. Tenn. Dec. 30, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 7

*Estate of Davis v. City of N. Richland Hills*,  406 F.3d 375, 381 (5th Cir. 2005). . . . . . . . . . . . . 7

*Kentucky v. Graham*, 473 U.S. 159 at 165. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Monell* v. *Dep 't ofSoc. Servs.,* 436 U.S. 658, 690-91 (1978). . . . . . . . . . . . . . . . . . . . . . . . . .  8,11

*Piotrowski* v. *City of Houston,* 237 F. 3d  567, 578 (5th Cir. 2001)
(citing *Monell,* 436 U.S. at 694). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8,10

*Cox* v. *City of Dallas,* 430 F. 3d 734, 748^9 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . .  8,12

*Sharp* v. *City of Houston,* 164 F. 3d 923, 935 (5th Cir. 1999)
(citing *Canton* v. *Harris,* 489 U.S. 378, 388 (1989)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8,10,12

*Bd. of the County Comm'rs* v. *Brown,* 520 U.S. at 404
(citing *Monell,* 436 U.S. at 690-91). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Webster* v. *City of Houston,* 735 F. 2d 838, 842 (5th Cir. 1984) (en banc). . . . . . . . . . . . . . . . . . 10

**Page(s)**

*Pembaur* v. *City of Cincinnati*, 475 U.S. 469,478 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Coggin* v. *Longview Indep. Sch. Disl*, 289 F. 3d 326, 333 (5th Cir. 2002). . . . . . . . . . . . . . . . 11

*Quinn v. Guerrero*, No. 4:09CV166, 2016 WL 4529959,
at *11 (E.D. Tex. Aug 28, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

La. R.S. 40:2531C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986). . . . . . . . . . . . . . . . . . . . . 15

*Kelleher v. Flawn,* 761 F.2d 1079 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ross v. Oceans Behavioral Hospital of Greater New Orleans,*
14-368, p. 7 (La. App. 5 Cir. 11/25/14); 165 So.3d 176,
2014 La. App. LEXIS 2839, 2014 WL 6687260. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mabry v. Andrus,* 45,135, p. 9 (La. App. 2 Cir. 4/4/10); 34 So. 3d 1075, 1081. . . . . . . . . . . . . . 16

*Beard v. Seacoast Elec., Inc.,* 2006-1244, p. 3
(La. App. 4 Cir. 1/24/07); 951 So.2d 1168, 1170-71. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

La. R.S. 23:967. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

iv

## I.   Introduction

Movers are the Chief of Gretna Police, Arthur Lawson, Captain Scott Vinson, and the City of Gretna.  Plaintiff, Daniel Swear, was employed by the City of Gretna as a commissioned police officer from December 2010 until he resigned in February 2015[1].

Mr. Swear's dedication to upholding the law began to slip in 2014.  On August 6, 2014, Mr. Swear was placed on a three-day suspension for failing to adhere to Departmental Regulations arising from an incident on July 24, 2014[2].

On or about December 17th, 2014, Mr, Swear attended a meeting with one of the four patrol divisions of the Gretna Police Department and Captain Vinson.[3]  Mr. Swear alleges that in this meeting, one of his supervisors, Sergeant Danielle Rodriguez, who is not named in his Complaint, told him that they were going to issue three citations a day and make an average of one arrest every two days worked.[4] To add to the confusion, Plaintiff alleges that yet another supervisor who is not named in his Complaint, then Sergeant David Heintz, instructed the patrol division, during that same meeting, to increase their productivity by ten (10) percent.[5] In actuality, the reason for the meeting was that a recent evaluation discovered that patrol officers were performing approximately one and a half hours of actual work during a twelve hour shift and more dedication to duty was expected by the citizens of the City of Gretna.

---

[1] Exhibit A, deposition of Daniel Swear, Exhibit 12 thereto

[2] Exhibit A, deposition of Daniel Swear, Exhibit 6 thereto (Rights Relative to Administrative Proceedings Form)

[3] *Id.*, page 21, lines 4-22.

[4] *Id.*, page 21, lines 23-25.

[5] *Id.*, page 23, lines 3-7.

Mr. Swear responded to this call to action by performing even less work that month. Additionally, Mr. Swear's daily reports mysteriously began lacking required detail such as time of arrival and departure at incidents while on patrol, furthering the appearance that he may have been neglecting his duty as a commissioned police officer. He was reprimanded for unsatisfactory performance by Sgt. Danielle Rodriguez for the failure to complete his sworn duty[6].

On January 27, 2015, during roll call, Mr. Swear presented a colleague with gifts that implied that he would need to perform sexual favors after being passed over for promotion[7]. As a Field Training Officer in the presence of at least one new recruit, this inappropriate behavior was a major cause of concern.

On February 2, 2015, Mr. Swear executed the Rights Relative to Administrative Proceedings Form and was officially reprimanded for the January 27, 2015 incident.[8] On the same day, he tendered his letter of resignation. On February 9, 2015, Mr. Swear alleges that he was summoned to a meeting with Captain Vinson in regard to Mr. Swear making defamatory statements about the Gretna Police Department and spreading rumors that the Department has instituted an illegal quota system to supplement the City's revenue stream.[9] Mr. Swear's only evidence of such was the December 2014 meeting when one patrol division was asked to expel a little more effort in their patrols.

Mr. Swear received his last paycheck from the City of Gretna in February 2015. Mr. Swear acknowledged in his deposition that he has NO evidence that Chief Lawson had any knowledge of a quota system[10], and further that

---

[6] Exhibit A, deposition of Daniel Swear, Exhibit 9 thereto

[7] Exhibit A, deposition of Daniel Swear, Exhibit 10 thereto

[8] Exhibit A, deposition of Daniel Swear, Exhibit 11 thereto

[9] Doc. 1, ¶ 24.

[10] Exhibit A, page 24, lines 3-6; page 25, lines 21-25; page 27, lines 8-11; page 100, lines 5-14.

he had only met Chief Lawson at a Christmas party.

It is undisputed that the Plaintiff's entire claim is rooted in his own interpretation of a "speech" that took place on one day in December 2014 and not on an official policy of the Gretna Police Department.

## II.  Legal Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[11]  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. [12]   A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*  A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. [13]

Once the moving party carries its burden pursuant to Rule 56( c ), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" [14]  A plaintiff may not rest upon the pleadings, but must set forth and support with summary judgment evidence facts showing the existence of a genuine

---

[11] Fed. R.Civ.P. 56c

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2501, 91 L.Ed.2d 202 (1986).

[13] *Fontenot v. Upjohn Co.*, 780 F.2d 1190,  1195 (5th Cir. 1986).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

issue for trial. [15]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party...If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." [16] The mere assertion of a factual dispute unsupported by probative evidence will not prevent summary judgment. [17]

Under the standard for summary judgment articulated above, Plaintiff's claims as set forth in his Complaint in this matter cannot survive summary judgment.  The facts of the case are not disputed by the Defendants.  The only disputes are Mr. Swear's strained interpretation of the facts which are totally unsupported by probative evidence.

## III.    Law and Argument

### A.    Defenses as a Matter of Law

#### 1.    Qualified Immunity

##### i.    No Individual Liability

The  affirmative defense of qualified immunity, asserted by Arthur Lawson and Scott Vinson[18],  precludes liability for damages on all of plaintiff's federal law claims against defendants in their individual capacities. [19] As such, any claim against Chief Lawson or Captain Vinson, in their individual capacities, must be dismissed.

In *Harlow v. Fitzgerald*, the U.S. Supreme Court established the principle that "government officials performing

---

[15] *S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA.*, 315 F.3d 533, 537 (5th Cir. 2003).

[16] *Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir. 1999) (quoting *Anderson,* 477 U.S. at 249-50).

[17] *Abbot v. Equity Group, Inc.* 2 F.3d 613, 619 (5th Cir. 1993).

[18] Doc. 8

[19] *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir.(en banc).

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [20] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." [21] To discharge this burden, the plaintiff must satisfy the well-established two-prong test developed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001). [22]

"First, he must claim that the defendants committed a constitutional violation under current law." [23] "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." [24] "The second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of clearly established law." [25] The Court can consider either prong first. [26]

---

[20] *Harlow*, 457 U.S. 800, 818 (1982).

[21] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[22] *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

[23] *Club Retro, L.L.C.*, 568 F.3d at 194 (internal quotation marks omitted).

> Plaintiff cannot overcome the first prong of the *Saucier* inquiry simply by alleging that the defendants engaged in some conduct and then labeling that conduct a constitutional violation. Rather, as the Supreme Court has made clear, to satisfy the first prong a plaintiff must convince the Court that "the facts that [the] plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In other words, plaintiff must show facts that, if true, would constitute a constitutional violation.

[24] *Id.* (internal quotation marks omitted).

[25] *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted).

[26] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

"Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury."[27]  "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate."[28] "Unless all reasonable officers in the defendants' circumstance would have known that the conduct in question violated the constitution, the defendant is entitled to qualified  immunity."[29]

When applying the case at bar to the established two-prong test developed by the United States Supreme Court in *Saucier*, the facts do not yield an unreasonable outcome, much less an unconstitutional one.[30] Unless accepting Mr. Swear's voluntary, unsolicited resignation is a constitutional violation, especially in light of his signed acknowledgment of his due process rights, the first prong of the test is not met.  Similarly, Mr. Swear can provide no proof of his First Amendment rights being squelched as his deposition testimony reveals that he (1) spoke with family, (2) spoke to fellow officers, Lee Zurich, and the FBI, and (3) drove around town with a license plate bearing the Louisiana revised statute for a "quota."  Mr. Swear fully exercised his constitutional rights and will be unable to pass the second prong of the test.  No matter if there were clear constitutional rights present, which is denied, the conduct of the defendants was not objectively unreasonable.  Arthur Lawson and Scott Vinson enjoy qualified immunity from any individual liability and these claims should be dismissed.

### 2.  *Respondeat Superior*

Even if proven, the City of Gretna cannot be found liable for any actions of the Chief of Police or Captain

---

[27] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[28] *Whitley*, 726 F.3d at 638 (internal quotation marks and  citations omitted).

[29] *Batiste v. Theriot*, 458 F. App'x 351, 354 (5th Cir. 2012).

[30] *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).

Vinson, nor can Arthur Lawson be found liable for any actions of Captain Vinson under § 1983 through *respondeat superior*.   *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).   Courts have similarly held that *respondeat superior* is not a viable theory of liability under § 1985.   *See Green v. Tilley*, No. 2:04 CV 0819, 2006 WL 220847, at *3 (W.D. La. Jan. 23, 2006); *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012); *Jefferson v. Corizon Healthcare Providers*, No. 3:12-0988, 2013 WL 6909969, at *3 (M.D. Tenn. Dec. 30, 2013). The Fifth Circuit has held that "[a] sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Here, there are no allegations plead in Mr. Swear's Complaint, nor any evidence whatsoever, that officers were improperly trained or supervised. In fact, the allegations of constitutional violations, i.e. due process and First Amendment, as stated *infra.*, do not apply to Arthur Lawson as Chief of Police or the City of Gretna at all.

### 3.   Official Capacity Liability

Claims against Arthur Lawson and Scott Vinson, in their official capacity, are really claims against the City of Gretna. The Supreme Court has explained that an official-capacity lawsuit is "only another way of pleading an action against an entity of which and officer is an agent."[31]   "When sued in their official capacities, officials are therefore representing their respective state agencies."[32] Plaintiff does not dispute that at all relevant times all of the defendants were officials of the Gretna Police Department of the City of Gretna. That being said, the City of Gretna cannot be

---

[31] *Kentucky v. Graham*, 473 U.S. 159 at 165

[32] *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015)

found liable as Mr. Swear repeatedly states that the Chief of Police, Arthur Lawson, knew of no such policy nor was he present during any discipline stemming from such a policy. [33] Further, Mr. Swear is unable to show that Captain Vinson disciplined him for his failure to follow an imaginary quota, because Captain Vinson did no such thing.

### 4. No *Monell* Liability for the City of Gretna

As stated *infra.*, Mr. Swear's claims fail on the merits. However, they also fail as a matter of law. A municipality faces Section §1983 liability only in circumstances where the local government has "a policy or custom" that "caused the alleged *constitutional* deprivation."[34] In addition, the policymaker must have had actual or constructive knowledge of then constitutional activity of municipal employees[35], yet remained deliberately indifferent.[36]

The only policy or custom Mr. Swear seeks to allege is that of a quota policy expressly prohibited by Louisiana law. [37] While no such policy or custom exits, the existence of such a policy would be a violation of *state* statutory law and not a "constitutional deprivation." Mr. Swear makes no allegations whatsoever of a policy or custom to violate his Fourteenth or First Amendment rights and therefore as a matter of law, *Monell* liability cannot be found.

However, even considering the alleged violation of a *state* statute, while incapable of imposing *Monell* liability, in his deposition, Mr. Swear recounts knowledge of at least three different purported standards of performance. The

---

[33] Exhibit A, page 24, lines 3-6; page 25, lines 21-25; page 27, lines 8-11; page 100, lines 5-14.

[34] *Monell* v. *Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978); *Piotrowski* v. *City of Houston,* 237 F. 3d 567, 578 (5th Cir. 2001) (citing *Monell,* 436 U.S. at 694).

[35] *Cox* v. *City of Dallas,* 430 F. 3d 734, 748^9 (5th Cir. 2005).

[36] *Sharp* v. *City of Houston,* 164 F. 3d 923, 935 (5th Cir. 1999) (citing *Canton* v. *Harris,* 489 U.S. 378, 388 (1989)).

[37] Doc. 1, ¶ 39.

first is the "10-2-2" system, which he alleges Scott Vinson established, requiring officers to perform ten items, two arrests, and two citations per shift.[38]  The next alleged quota came from Sergeant Danielle Rodriguez who allegedly told Swear that, "we were going to issue three citations a day and make an average of one arrest every two days worked."[39]  Mr. Swear then goes on to say that at the same December meeting, Sergeant David Heintz, asked the patrol division to give ten (10) percent more effort than they were currently giving.[40]

When asked why he asked another superior officer to step out of the February 9, 2017 meeting with Captain Vinson, Mr. Swear stated, "I don't know if that other supervisor was privy to that information. Scott was the Captain...He didn't call in the entire patrol division to give the same speech to everyone at the same time.  I don't know what was uttered in the other speeches given to the other teams."[41]

Mr. Swear sued Arthur Lawson, Scott Vinson, and the City of Gretna claiming that the Gretna Police Department, of which Arthur Lawson is the sole policymaker, instituted a mandatory quota policy in violation of *state* law. However, his own deposition shatters any perception of an established policy or custom of a statutory violation. Mr. Swear cannot point to a single standard of performance which he equates to a quota policy.  All of these alleged "systems" named above contradict each other and thus cannot lead to the conclusion that there was an established mandatory quota policy or custom at the Gretna Police Department.

### i.    Plaintiff Has Failed to Adequately Plead a Custom or Policy of "Quotas"

Plaintiff must adequately plead the existence of a municipal policy or custom to establish Section §1983 municipal liability.   Mr. Swear does not allege that there was an official City policy supporting a "Quota", a violation

---

[38] Exhibit A, page 17, lines 12-20.

[39] Exhibit A, page 21, lines 21-25.

[40] Exhibit A, page 23, lines 3-7.

[41] Exhibit A, pages 55-57.

of *state* law.   Under *Monell*, a municipality may be liable if its employees engage in a custom or pattern of *unconstitutional* activity that is "so widespread as to have the force of law."[42]   These violations "must have occurred for so long or so frequently . . . that the objectionable conduct is the expected, accepted practice of city employees."[43]

Again, Mr. Swears allegations regarding an alleged quota would not be "a custom or pattern of unconstitutional activity."   However, even setting aside that critical legal requirement, Mr. Swear fails to make such a pleading, and if anything his Complaint and deposition refute these requirements directly.   He implies that other high-ranking officers did not know of such a system, such that Captain Scott Vinson would have to come clean and "fall on his sword."[44]   Throughout his deposition, he pervasively states that Arthur Lawson and other superiors including the Deputy Chief of Police do not know of any system.   In fact, Chief Lawson, Deputy Chief Christiana, and (16) sixteen other officers (Captains, Lieutenants, Sergeants, Detectives, Officers, City Clerk of Court, and Communications Officer) have executed affidavits attesting that they are unaware of any quota policy[45].

---

[42] *Bd. of the County Comm'rs* v. *Brown,* 520 U.S. at 404 (citing *Monell,* 436 U.S. at 690-91).

[43] *Webster* v. *City of Houston,* 735 F. 2d 838, 842 (5th Cir. 1984) (en banc); *see also Piotrowski* v. *City of Houston,* 237 F. 3d 567, 579 (5th Cir. 2001) (A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy" (quoting *Webster,* 735 F. 2d at 841); *Sharp* v. *City of Houston,* 164 F. 3d 923, 936 (5th Cir. 1999).

[44] Exhibit A; p. 56.

[45] See Exhibits B-1 (Chief Arthur S. Lawson, Jr.); B-2 (Deputy Chief Anthony H. Christiana, Jr.); B-3 (Captain Eric Covell-Commander of Patrol Division); B-4 (Captain Russell S. Lloyd, Jr.); B-5 (Lieutenant J.R. Rogers-Former A-Team Patrol Commander); B-6 (Lieutenant Philip Saladino-B-Team Patrol Commander); B-7 (Lieutenant Scott Vinson); B-8 (Lieutenant/City of Gretna Clerk of Court Terri Brossette); B-9 (Jarvis Jackson-Commander of Strategic Planning); B-10 (Detective Russell Lloyd, II); B-11 (Officer Brad Cheramie); B-12 (Sergeant Brad Miller); B-13 (Master Patrol Officer Corey Newby); B-14 (Officer Brian Legnon); B-15 (Officer Kolby Arabie); B-16 (Officer Cody Arabie); B-17 (Officer Patsy Klees); and B-18 (Communications Officer Ashley Berry)

### ii. Plaintiff Has Failed to Adequately Plead that the "Quota System" Was the "Moving Force" Behind His Alleged Constitutional Violations

As the Supreme Court explained in *Pembaur v. City of Cincinnati*, 475 U.S. 469,478 (1986), "*Monell* is a case about responsibility."[46] The plaintiff must demonstrate "a direct causal link between the municipal action and the deprivation of federal rights" for a court to find that a municipality's policy or custom was responsible for a constitutional violation. The municipal policy must have been "the moving force" that actually caused the violation.[47] Causation is crucial in Section 1983 cases because it is unfair to hold a municipality-and its taxpayers-liable for constitutional violations unless those violations "result[ed] from the decisions of its duly constituted legislative body . . . ."[48]

Plaintiff, Mr. Swear, has failed to adequately plead that the quota system, a violation of *state* law, was the "moving force" behind his alleged injuries and even if he has, a quota system is not a "deprivation of a federal right." Relying on the same speculative information, Plaintiff seeks to blame the City of Gretna for his seemingly voluntary change of employment. Once again, the Plaintiff submitted a resignation, he was not terminated. This lack of animus is evidenced further by the Department's allowing Mr. Swear to retain his commission until he obtained a new commission in Plaquemines Parish. Therefore, it is clear that Mr. Swear has again failed to adequately pleaded facts necessary to successfully assert his claim.

### iii. Plaintiff Has Not Adequately Plead Municipal Policymakers Knew or Should have Known of A Pattern of Wrongdoing Specific to His Case

To sustain a Section 1983 claim against a municipality in the absence of an official policy, the policymakers must

---

[46] *Pembaur v. City of Cincinnati*, 475 U.S. 469,478 (1986).

[47] *Monell* v. *Dep 't o/Soc. Servs.*, 436 U.S. 658, 694 (emphasis added).

[48] *Brown*, 520 U.S. at 403^104 (1997) (citing *Monell*, 436 U.S. at 694); see also *Coggin v. Longview Indep. Sch. Dist.*, 289 F. 3d 326, 333 (5th Cir. 2002).

have actual or constructive knowledge of the custom or pattern of municipal employees' constitutional violations.[49]

Constructive knowledge can exist when a governing body should have known of the constitutional deprivations "if it had properly exercised its responsibilities, as, for example, the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." As shown above, Plaintiff has failed to plead a sufficient number of similar incidents to demonstrate a pattern, unofficial policy, or custom as it relates to Plaintiff's specific constitutional deprivations.[50] Similarly, Plaintiff has failed to adequately allege the requisite actual or constructive knowledge on the part of sole policymaker, Arthur Lawson, or that leadership failed to take corrective action once it learned of the violations.

Defendant, City of Gretna, therefore concludes that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.  Here, there is no established custom or policy, whether of a state statutory violation or deprivation of federal right.

## B.  Fourteenth Amendment Due Process Claim

A review of plaintiff's complaint (Doc. 1) shows that he has made multiple allegations including violations of his Fourteenth Amendment right to due process upon facts that are generally not disputed.  However, Mr. Swear

---

[49] *Cox v. City of Dallas*, 430 F. 3d 734,748^19 (5th Cir. 2005).

[50] *Quinn v. Guerrero*, No. 4:09CV166, 2016 WL 4529959, at *11 (E.D. Tex. Aug 28, 2016) ("[P]laintiff has not stated any facts that the City of McKinney had notice of a pattern of similar violations, which were fairly similar to what ultimately transpired when the plaintiffs own constitutional rights were violated . . . .") (internal citations omitted); see also *Sharp v. City of Houston*, 164 F. 3d 923,935 (5th Cir. 1999) (finding police supervisor knew of the specific retaliation based on the code of silence for reporting sexual harassment and failed to take corrective action).

creates additional facts through inferences and mental gymnastics that he cannot prove. Mr. Swear's Complaint alleges, "[t]he Plaintiff's statutory entitlement to disciplinary and pre-termination substantive procedures give rise to a protected due process interest under the Fourteenth Amendment." [51] The Complaint goes on, "[t]he Defendant's wholesale failure to follow any mandatory provision of such statutory scheme violates Mr. Swear's procedural due process rights under the Fourteenth Amendment. The Defendants' arbitrary and capricious conduct regarding its intention to terminate of Mr. Swear if he did participate in, and comply with the quota system newly instituted by the Gretna Police Department violates his substantive due process guarantees under the Fourteenth Amendment." [52] Plaintiff continues to allege, "[t]he conduct of the Defendants was committed with deliberate indifference and reckless disregard for Mr. Swear's federal constitutional rights, entitling him to punitive damages under 42 U.S.C. 1983." [53]

Mr. Swear's claim is without merit for a variety of reasons. First and foremost, Mr. Swear alleges that the "[d]efendant's failure to adhere to the minimum statutory requirements prior to notifying Mr. Swear of his pending termination is violative of La. R.S. 40:2531( C)." However, Mr. Swear was not terminated by the Gretna Police Department, he resigned in accordance with his own free will. Further, La. R.S. 40:2531 applies to commissioned police officers who are under investigation. [54] There is no evidence that Mr. Swear was under any sort of investigation prior to his resignation. For these reasons alone, Mr. Swear's argument is invalid.

Moreover, defendants provide a very clear administrative record that indicates that Mr. Swear was disciplined on multiple occasions, subject to appropriate punishment, and illustrates that Mr. Swear was completely aware as

---

[51] Doc. 1, ¶ 30.

[52] *Id.*, ¶ 31-32.

[53] *Id.*, ¶ 33.

[54] La. R.S. 40:2531(a)

evidenced by his signature acknowledging his rights.[55]  Mr. Swear's transgressions came to a head on January 27, 2015, just days before he submitted his resignation letter.  Mr. Swear, a Field Training Officer, attempted a sexually charged ruse against a colleague in the presence of at least one new recruit.[56]  Mr. Swear subsequently tendered his letter of resignation less than a week later.[57]  Mr. Swear's claims fail.

### C.  First Amendment Discrimination and Retaliation First Amendment Violation

Mr. Swear next argues that he was constructively discharged as an act of reprisal for engaging in protected speech.[58] Plaintiff continues, "[t]he Defendants arbitrary and capricious conduct was reckless, malicious, and done with deliberate indifference to Mr. Swear's First Amendment rights and protections.[59] Finally, Mr. Swear states that the Defendants' conduct "further entitles Mr. Swear to an award of punitive damages pursuant to 42 U.S.C. 1983."[60]  Although Mr. Swears complaint alleges claims against all defendants, in deposition, Mr. Swear has limited his claim to be against Scott Vinson.[61]   Nonetheless, all Defendants' reassert their arguments in opposition to Section 1983 damages laid out above.  None of the Defendants' actions can possibly be construed as arbitrary and capricious, because put simply, none of the Defendants did anything at all.  Mr. Swear resigned on his own.

When Mr. Swear was asked if Scott Vinson stopped him from expressing his opinions to his fellow officers or family members, Mr. Swear responded, "No.  He couldn't stop me from talking to anyone because he couldn't be

---

[55]  Exhibit A, Exhibits 6, 8, 9, 10, and 11 thereto

[56]  Exhibit A, page 42-43.

[57]  Exhibit A, Exhibit 12 thereto

[58]  Doc. 1, ¶ 36.

[59]  Doc. 1, ¶ 37.

[60]  Doc. 1, ¶ 38.

[61]  Exhibit A, pages 100-103.

– he didn't know who and when I was talking to anyone."[62] When asked how Arthur Lawson impacted his First Amendment Rights, Mr. Swear responded, "I'm unsure of which particular facts would fall into this specific category."[63] Plaintiff continued to state that Chief Lawson never told Mr. Swear anything about expressing his opinions and that he had only met him at a Christmas party.[64]

To succeed in a First Amendment retaliation claim under 42 U.S.C. 1983, a public employee must show: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." [65]

Mr. Swear suggests he suffered an adverse employment action in the form of a constructive discharge and that he spoke as a citizen on a matter of public concern.  However, he fails to plead that his interest in the speech outweighs the government's interest in the efficient provision of policing the community of Gretna, nor does he appropriately plead that the speech precipitated the adverse employment action.

A constructive discharge occurs when the employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign.[66] The determinative factor is not the employer's intentions, but the effect of the conditions on a reasonable employee. [67] In *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d

---

[62] Exhibit A, page 101, lines 20-24.

[63] *Id.*, at page 103, lines 15-18.

[64] *Id.*, at page 103, lines 19-22.

[65] *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)(internal quotation marks and citations omitted).

[66] *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986)

[67] *Kelleher v. Flawn,* 761 F.2d 1079 (5th Cir. 1985).

748, 755 (5th Cir. 1986), the Plaintiff was demoted after making racially charged statements, and the Court found that the humiliation and demotion did not warrant a constructive discharge because it would not create conditions so intolerable that a reasonable person would have felt compelled to resign. [68]

Here, Plaintiff states that he was constructively discharged in response to his protected free speech. [69] Since the determinative factor is not the employer's intentions, but instead the effect of the conditions on a reasonable employee, Mr. Swear must show that due to his exercising free speech, the Department imposed conditions so intolerable that a reasonable person would have felt compelled to resign.  Mr. Swear cannot meet this burden.  While he was reprimanded for failure to uphold the law after the alleged "December 17th Speech," he responded by promising to level out after the holiday season, but did not.

Defendants argue that even if he did face discipline, it was well-warranted, and since he did not face unreasonable disciplinary measures prior to his resignation, it could not have amounted to a constructive discharge.  Therefore, Mr. Swear's First Amendment claim should fail.

### D.  State Law Whistleblower Claim

Mr. Swear, in his capacity as a police officer for the City of Gretna further raises a Whistleblower Claim, arising under La. R.S. 23:967.  To qualify for protection under the Louisiana Whistleblower Statute, a plaintiff must prove that his employer committed an *actual* violation of state law.[70]  Further, the statute is only triggered by violations of

---

[68] *Jett,* 798 F.2d 748.

[69] Doc. 1, ¶ 36.

[70] *Ross v. Oceans Behavioral Hospital of Greater New Orleans,* 14-368, p. 7 (La. App. 5 Cir. 11/25/14); 165 So.3d 176, 2014 La. App. LEXIS 2839, 2014 WL 6687260; *Mabry v. Andrus,* 45,135, p. 9 (La. App. 2 Cir. 4/4/10); 34 So. 3d 1075, 1081.

Louisiana law, not federal law. [71]

Once again, Mr. Swear's claim will fail as he has not proven that his employer committed an <u>actual</u> violation of state law. Mr. Swear's own deposition illustrates that there was no existing policy or "quota" system present at the Gretna Police Department.[72] This proves fatal to his Whistleblower claim as it destroys the notion that he has proven that an <u>actual</u> violation of state law occurred.

**IV.     Conclusion**

Mr. Swear has failed to plead and/or prove facts that amount to a quota policy instituted by Arthur Lawson, the sole policymaker of the Gretna Police Department. He fails to plead facts that illustrate an unreasonable work environment forcing his resignation. Finally, he fails to plead facts that prove any sort of State law or Constitutional violation. Because there are no genuine disputes of material fact and the Defendants are entitled to a Judgment by law, Defendants' Motion for Summary Judgment should be granted and Mr. Swear's claims dismissed, reserving unto the defendants their right to proceed for attorney fees and costs pursuant to 42 U.S.C. 1988.

**WHEREFORE,** Defendants, Arthur Lawson, Scott Vinson, and the City of Gretna respectfully request that this Court grant their Motion for Summary Judgment, on all grounds, and dismiss Mr. Swear's claims in their entirety, as well as provide any further and additional relief that this Court deems just and proper.

---

[71] *See Beard v. Seacoast Elec., Inc.,* 2006-1244, p. 3 (La. App. 4 Cir. 1/24/07); 951 So.2d 1168, 1170-71.

[72] Exhibit A, page 29, lines 6-20.

Respectfully submitted,

**BEEVERS & BEEVERS, L.L.P.**

/s/ Steven M. Mauterer

WILEY J. BEEVERS, Bar #2902
SHAYNA BEEVERS MORVANT, Bar #34442
STEVEN M. MAUTERER, Bar #26682
210 Huey P. Long Avenue
Gretna, LA 70053
Telephone: (504) 361-4287
Facsimile: (504) 362-1405

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this <u>25</u> day of <u>September</u>, 2017, the above and foregoing has been served on all counsel of record by electronic filing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this case.

<u>          /s/ Steven M. Mauterer          </u><br>
STEVEN M. MAUTERER

Seth M. Dornier
Dornier Law Firm, LLC
351 Saint Ferdinand St; Suite B
Baton Rouge, LA 70802

Corey J. Hebert
6513 Perkins Rd.
Baton Rouge, LA 70808