**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DANIEL SWEAR               :      CASE NUMBER:  2:15-cv-06591
                                   :
                                   :      SECTION "G"
VERSUS                         :      HON. JUDGE BROWN
                                   :
                                   :      MAGISTRATE
LAWSON, et al.                 :      HON. JUDGE van MEERVELD

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

**I.**      **INITIAL OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT**

The Plaintiff objects to the admissibility of the affidavits submitted by the defendants and attached to its memorandum in support of its motion for summary judgment for the following reasons:

These affidavits are misleading to the Court and plaintiff respectfully suggest that they should not be accepted as support for defendants' contentions. As an example, in the affidavit of Phillip Saladino he alleges that are he was unaware of a quota system within the Gretna Police Department; however, the defendant was in possession of an audio recording produced by the plaintiff in response to a request for production signed June 6, 2017, in which the existence of the department wide quota policy was unequivocally admitted to in the presence of Mr. Saladino. [See Doc. 31-8 and Plaintiff's Exhibit 2, Declaration of Paul Pichoff]. Moreover, it was J. R. Rogers (Junis J. Rogers) who openly proclaimed the quota system in that audio, yet his affidavit states that he knew nothing about it. [See Doc. 31-7 and Plaintiff's Exhibit 2, Declaration of Paul Pichoff]. Interestingly, the defendant submitted no affidavit of Sgt. Danielle Rodriguez of whom an audio

recording was also produced on the same date in which she admits to the existence and enforcement of the Gretna Police Department's quota policy.

Moreover, 14 of the 16 affidavits attached to defendants' motion are effectively carbon copies. This is made clear by the fact that Scott Vinson in his affidavit at ¶ 9 refers to himself in the third person. [See Doc 31-9].

## II.    INTRODUCTION

Gretna, Louisiana is known as the arrest capital of the world. It has recently receive nation and international media coverage because of this title. Gretna received this recognition because it has had a longstanding policy, practice and custom of institutionalized quotas.

## III.   SUMMARY JUDGMENT STANDARD

The defendants submit their summary judgment seeking dismissal of all plaintiff's claims based upon its choice of seven (7) statements of fact it claims are not in dispute. [See Doc. 31-21]. Plaintiff respectfully suggest to this Honorable Court that these statements, which are disputed, are not sufficient to support the granting of summary judgment in this matter.

"Summary judgment should be used most sparingly in First Amendment cases involving delicate constitutional rights, complex fact situations, disputed testimony and questionable credibilities". *Haverda v. Hays County*, 723 F.3d 586, 592 (5th Cir. 2013). "And, more specifically, the Fifth circuit has held that summary disposition of the causation issue in First Amendment retaliations claims is generally inappropriate." *Id.* at 595. See also, *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001); *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) and 10B *Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure* § 2732.2 (3d ed. 2013) ("[C]laims requiring a determination regarding intentions or motives are particularly unsuitable for summary adjudication.... If plaintiffs claim that some conduct on the

part of defendant abridged their First Amendment rights, summary judgment may be precluded because questions concerning defendant's motives or knowledge must be determined." In reviewing a summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017); FRCP, Rule 56(c)(3). All evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor. *Id*. at 329.

At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. *Maurer v. Town of Independence*, -- F.3d --, 2017 WL 3866561 (5th Cir. 9/5/17) (claim under 42 U.S.C. 1983). See also, *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016); F.R.C.P., Rule 56(c). After a 2010 revision to Rule 56, "materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC*, at 534 (quoting F.R.C.P., Rule 56(c)(2)). This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the non-movant—without imposing on parties the time and expense it takes to authenticate everything in the record. *Id*. See also, *Lee* at 335; (5th Cir. 2017)*; Dejean v. Caillou Island Towing Co., Inc*., 2017 WL 3024264 (E.D. La. 2017).

In *Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993), the Fifth Circuit held that the movant failed to satisfy its burden as set out in *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986), as its motion for summary judgment "failed to raise any factual issues at all, other than in the most conclusory terms. And a mere conclusory statement that the other side has no evidence

3

is not enough to satisfy a movant's burden. *Id*. at 544.  See also, *Austin v. Kroger Texas, L.P.,* 864 F.3d 326, fn.10 (5th Cir. 2017).

## IV.    CAUSE OF ACTION UNDER 42 U.S.C. 1983

A cause of action under 42 U.S.C. § 1983 is available to:

Every person who, under color of any statute, ordinance, regulation, custom, or usage subjects, or causes to be subjected, any person to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Municipalities and other local government entities are included among "any person" to whom 1983 applies. *Collins v. City of Harker Heights, Tx.*, 503 U.S. 115, 120, 112 S.Ct. 1061 (1992). See also, *Monell v. Dept of Social Srvcs. of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978). An action under 1983 does not require proof of an abuse of governmental power separate and apart from proof of the constitutional violation, as the statute draws no distinction between abusive and non-abusive federal violations.  *Id*. at 119.

## V.    ELEMENTS OF FIRST AMDNEMENT RETALIATION/DISCRIINATION CLAIM

As the Plaintiff, Daniel Swear, has alleged that the City of Gretna and individual officials of the City have violated his First Amendment rights under the federal constitution, jurisprudence dictates the particular elements of his cause(s) of action under 1983.  The four-step test required to establish a retaliation claim are:

(1) the plaintiff suffered an *adverse employment dec*ision;

(2) the plaintiff's speech involved a *matter of public concern*;

(3) the *plaintiff's interest in speaking outweighed* the governmental defendant's interest in promoting efficiency; and,

(4) the protected *speech motivated the defendant's conduct*."

This test has been primarily derived from the United States Supreme Court decisions of *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731 (1968) and *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684 (1983). [1]  Additionally, the fifth element, derived from the decision of *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951 (2006), requires a determination if the employee spoke as a citizen (on a matter of public concern) rather than solely as an employee. This element is considered in the second element of the four-part test described above.

   **(A)** **Adverse employment decisions** include reprimands and do not require formal decisions, *Juarez.* at 356; *Sharp, at* 933; *Pierce v. Texas Dep't of Criminal Justice*, 37 F.3d 1146, 1149 (5th Cir. 1994); *Harrington v. Harris*, 118 F.3d 359 (5th Cir. 1997), "a contrary rule finds support neither from our case law nor from the purposes of § 1983". *Ibid*. Instead, our precedent indicates that informal decisions such as alleged agreements can be "adverse employment decisions" subject to the same protections as formal decisions. *Juarez*, citing *James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008). A constructive discharge, as alleged in this matter, certainly suffices for adverse employment action. See, *Rutan v. Republican Party*, 497 U.S. 62, 76, 110 S.Ct. 2729 (1990); *Pierce*, 37 F.3d at 1149; *Click v. Copeland*, 970 F.2d 106, 110-111 (5th Cir. 1992). Informal governmental policies can establish § 1983 liability against individuals acting in their official capacity to the same extent as formal governmental policies can. See *Johnson v. Rodriguez*, 110 F.3d 299, 312 (5th Cir. 1997). This further supports the conclusion that deprivations subject to § 1983 liability do not result only from formal government actions.  *Id*.

---

[1]  See also, *Lane v. Franks*, —— U.S. ——, 134 S.Ct. 2369, 2377 (2014).  *Teague v. City of Flower Mound*, 179 F.3d 377, 380 (5th Cir. 1999); *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999); *Juarez v. Aguilar*, 666 F.3d 325, 356 (5th Cir. 2011) and *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

"Additionally, a rule that punishes formal retaliation but foregoes punishment when the same end is accomplished informally would undercut the purpose of § 1983. Such a rule would only encourage municipalities to conduct their business off-the-record. Given that such an incentive structure would likely make state abuses of power more common rather than less, the Appellants' proposed rule does not promote the purposes envisioned by Congress when it enacted liability under § 1983." *Juarez, supra*. See also, *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.")  "For these reasons, we will not extend our precedent to exempt decisions made through informal procedures from the category of 'adverse employment decisions' that can result in liability under § 1983. Even if an adverse governmental decision does not result from a formal vote, the 'final decision-maker' responsible for that adverse employment decision is subject to individual liability if her decision was motivated by impermissible considerations." *Juarez, supra.*

**Facts Requiring Denial of Summary Judgment.**

The Plaintiff received a formal disciplinary reprimand from his immediate supervisor Sgt. Danielle Rodriguez for failing to meet the mandated quota of the Gretna Police Department Patrol Division for the month of December 2014. (See, Deposition of Daniel Swear Exhibit 31-2 at page 193) (Statement of Facts at paragraph 29)

On February 2, 2015, the Plaintiff was called to a meeting with Captain Scott Vinson, who informed plaintiff that his field training officer position with the Gretna Police Department was terminated effective immediately. (See, Deposition of Daniel Swear at pages 54, 98, 99, 101, 105, 135-136 and Statement of Facts) At this meeting Captain Vinson referred to plaintiff's speech regarding the department wide quota system as "poison".  (Id.)  At this meeting Plaintiff was

further reprimanded by Vinson for attempting to break the chain of command in order to speak with Deputy Chief Christiana directly about the illegal quota system. (Id.)

In response to Captain Vinson's statements and action, plaintiff left the meeting with Captain Vinson, prepared a letter of resignation (giving a two-week notice of separation of employment), and gave the letter to Sgt. Chris Tappay. (Id)  The police department did not honor plaintiff's resignation and required plaintiff to involuntarily use two weeks of accrued vacation time (until February 12, 2015).

Thereafter, on February 9, 2015, Plaintiff was summoned to a second meeting with Captain Vinson who gave plaintiff the opportunity to resign immediately in lieu of termination and investigation for making defamatory statements against the Gretna Police Department in the form of speech against the illegal quota system. (Statement of Facts at paragraph 35) The Plaintiff knew that Captain Vinson's anger, animosity and authority would lead to his impending termination in such a manner as to cause the Plaintiff to be "blackballed" from law enforcement, effectively ending his career. Additionally, Plaintiff was further contacted by the head of the Gretna Police Department Internal Affairs Bureau and directed to remove a license plate from his personal vehicle which displayed La. R.S. 40: 2401.1, Louisiana's law prohibiting quotas for law enforcement officers. (Statement of Facts at paragraph 38). The Plaintiff, Daniel Swear, respectfully submits that the actions of officials of the Gretna Police Department satisfy the adverse employment action element of his 1983 claim for the purpose of summary judgment.

**(B)  Speech as a Matter of Public Concern**

The Court must determine whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." *Branton v. City of Dallas*, 272 F.3d 730 (5th

Cir. 2001) citing *Connick*, at 146. Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Ibid*. "Public employees by virtue of their public employment, may make valuable contributions to public debate." *Gonzalez v. Benavides*, 774 F.2d 1295, 1299 (5th Cir. 1985). The nature of their employment does not exclude the possibility that an issue of private concern to the employee may also be an issue of concern to the public. *Id*. at 1305. [2]

"Were public employees not able to speak on the operations of their employers, the community would be deprived of informed opinions on important public issues." *San Diego v. Roe*, 543 U.S. 77, 82, 125 S.Ct. 521 (2004). Were it not for speech of public employees, "the interest at stake is as much the public's interest in receiving informed opinion as it is the employees own right to disseminate it." *Id*. at 82. It is long since been acknowledged that, "[g]overnment employees are often in the best position to know what ails the agency for which they work". *Waters v. Curchill*, 511 U.S. 661, 674, 114 S.Ct. 1878 (1994).

Speech "complaining of misconduct within the police department **is** speech addressing a matter of public concern." *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 463 (5th Cir. 1990); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1992). "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials concerns matter of public import." *Thompson*, at 463 (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1998). Exposure of official misconduct, especially within the police department, is generally

---

[2]   "Neither the First Amendment itself nor our decisions indicate that ... freedom of speech is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." *Givhan v. Western Line Consolid. Sch. Dist.*, 439 U.S. 410, 415-16, 99 S.Ct. 693 (1979); see also, *Kennedy*, 224 F.3d at 374; *Thompson*, 901 F.2d at 467; *Wilson*, 973 F.2d at 1265; *Benningfield v. City of Houston*, 157 F.3d 369, 373-74 (5th Cir.1998); *Brown v. Texas A&M Univ.*, 804 F.2d 327, 337 (5th Cir. 1986).

of great consequence to the public. *Brawner v. City of Richardson*, 855 F.2d 187, 191-92 (5th Cir.1988). "There is perhaps no subset of 'matters of public concern' more important, [for purposes of First Amendment protection of speech of public employees,] than bringing official misconduct to light." *Davis v. Ector County*, 40 F.3d 777, 782 (5th Cir. 1995); see also *Denton v. Morgan*, 136 F.3d 1038, 1043 (5th Cir.1998); *Thompson*, 901 F.2d at 463.

**Facts Requiring Denial of Summary Judgment**

The conduct at issue in this matter protected by the First Amendment encompasses both speech and expression. The Plaintiff spoke widely and persistently to "anyone who would listen" regarding the illegal quota policy of the Gretna Police Department. (Statement of Facts at paragraphs 24-28). The Plaintiff also had a license plate made (which he placed on his personal vehicle), which displayed La. R.S. 40:2401.1, the Louisiana state law prohibiting quotas for law enforcement officers. (Statement of Facts at paragraph 38) A quota system, facially violative of Louisiana law, was (and still likely is) utilized and enforced within the Gretna Police Department.

Plaintiff's speech and expression pertained to the unlawfulness and illegality of the quota system implemented and enforced by the Gretna Police Department. The Plaintiff submits that the relevant controlling jurisprudence regarding speech and expressive conduct pertaining to unlawful activity of a governmental body, especially a police department satisfies the requisite speech on a matter of public concern.

**(C)     Speech Predominately as a Citizen or Employee (The *Garcetti* Inquiry)**

The Second Circuit decision in *Matthews v. City of New York*, 779 F.3d 167 (2d Cir. 2015), is in part indistinguishable from the fact of this matter *sub judice*.  In *Matthews*, a police officer filed a 1983 First Amendment retaliation action regarding an arrest quota policy in his precinct. The case contains an excellent and thoughtful analysis of this inquiry.

In the post-*Garcetti* decision of *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008) at FN 3, [3] the Fifth Circuit stated, "We recognize that it is not dispositive that a public employee's statements are made internally". Citing *Williams*, at 694; *Garcetti, supra*; and, *Givhan v. Western Line Consolidated Sch. Dist.*, 439 U.S. 410, 99 S.Ct. 693 (1979). "After all, *Garcetti* 'did not explicate what it means to speak pursuant to one's official duties, although we do know that a formal job description is not dispositive, nor is speaking on the subject matter of one's employment." *Cutler v. Stephen F. Austin State University*, 767 F.3d 462 (5th Cir. 2014), citing *Williams v. Dallas. Indep. Sch. Dist*., 480 F.3d 689, 692 (5th Cir.2007).

In *Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013), the court held that: "First, particularly in a highly hierarchical employment setting such as law enforcement, whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties. When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties. Thus, we agree with the Fifth Circuit that, generally, "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job," *Dahila* quoting, *Davis* v. *McKinney*, at 313 (5th Cir. 2008), although "it is not dispositive that a public employee's statements are made internally," *Id*. at 313.  "If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a

---

[3]  In *Davis v. McKinney*, 518 F.3d 304, 307 (5th Cir. 2008), the court held that an information systems auditor spoke in part as a citizen on a matter of public concern when she sent reports to the EEOC, FBI, and university officials seeking investigation into complaints she made while working for the University of Texas system. The speech to two independent outside agencies appeared to be dispositive in the court's finding that Davis spoke as a citizen. *Id*. at 313-316.

citizen." *Ibid.* Nevertheless, "[t]he existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). Speech that touches both matters of public and personal interest-so-called "mixed speech"-remains protected by the First Amendment as long as it was made "predominantly 'as a citizen.' " *Harris*, 635 F.3d at 692 (quoting *Dodds*, 933 F.2d at 273).

Similarly, in *Charles v. Grief*, 522 F.3d 508 (5th Cir.2008), this court found that a member of the Texas Lottery Commission spoke as a citizen when he sent an email to members of the Texas Legislature as well as high-ranking Lottery Commission officials raising concerns about racial discrimination and retaliation against him and other minority employees of the Commission. *Id*. at 510. There the court considered the fact that the speech "was not made in the course of performing or fulfilling his job responsibilities ... but was communicated directly to elected representatives of the people." *Id*. at 514.

**Fats Requiring Denial of Summary Judgment**

The Plaintiff spoke out against the unlawful quota system of the Gretna Police Department both within his employment and outside of his employment. (Statement of Facts at paragraphs 20, 22, 25). Additionally, Plaintiff displayed the state law prohibiting quota's for police officers on his personal vehicle. (Statement of Facts at paragraph 28) The plaintiff spoke to his immediate supervisors (Sgts. Rodriguez and Heintz), fellow officers, his father, grandmother, the FBI, the harbor patrol, a television investigative reporter. (Statement of Facts at paragraph 26). This is not an exclusive list as Plaintiff stated that he "spoke to everyone that would listen". (Statement of Facts at paragraph 26). Additionally, Plaintiff later met with two agents from the FBI and filed an online complaint with the Louisiana Office of the Attorney General. (See, Doc 31-2, Deposition

of Daniel Swear at 44 – 47 and Statement of Facts) As a patrol officer, the plaintiff was not in any conceivable way a part of the Plaintiff's ordinary job duties to have input, comment on or criticize an institutionalized policy of the Gretna Police Department. Furthermore, the Plaintiff chose avenues for his speech that were available to any and every average citizen.  The Plaintiff's speech and expressive conduct was not undertaken as an employee but as a citizen for the purposes of the *Garcetti* inquiry on summary judgment.

      **(D)**    **The *Pickering* Balancing Test**

      The Fifth Circuit has held: "We must then balance the employee's interest, as a citizen, in commenting upon matters of public concern against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Branton, supra* citing *Rankin*, 483 U.S. at 388, 107 S.Ct. 2891 and *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. The state interest considerations focus on the "*effective* functioning of the public employer's enterprise." *Rankin*, 483 U.S. at 388, 107 S.Ct. 2891. "Real, not imagined, disruption is required, and the 'close working relationship' exception cannot serve as a pretext for stifling legitimate speech." *McKinley v. City of Eloy*, 705 F.2d 1110, 1115 (5th Cir. 1983). Moreover, concerns about maintaining harmony and eliminating disruption cannot be the sole measure of government interest when the employee's speech furthers other important state interests. See e.g. *Wilson v. UT Health Center*, 973 F.2d 1263, 1270 (5th Cir. 1992).

      **Fats Requiring Denial of Summary Judgment**

      The Plaintiff's protected conduct under the First Amendment centered on his employer's ongoing and systemic violation of Louisiana statutory law, La. R.S. 40:2401.1, entitled: Prohibition Against Quotas.  The "direct evidence" submitted herein states that such quotas require officers to make unlawful arrest of the public. (See, Declaration of Paige Broulette at paragraph

12

12) "I quit because I did not want to be federal prosecuted for unlawfully arresting someone just to meet the Gretna Police Department Quota." (*Id*. at paragraph 16) "The quota policy was well and widely known throughout the Gretna Police Department through the patrol divisions. (*Id*. at paragraph 21) Patrol officers and their supervisors were subject to discipline if the mandatory quota was not met. (See, *Id*. (Paige Broulette); Declaration of Paul Pichoff at paragraphs 16 through 21; and, Declaration of Sgt. David Brian Heintz at paragraphs 10, 15, 17, 23, 26, 29, 33)

The effective and efficient operation and functioning of any governmental agency cannot be based upon a violation of law and the rights of the very citizens to whom and for whom they are charged with providing services. This is especially sacrosanct when the governmental body in question is a police department charged with administering and enforcing "the law". The Plaintiff submits that the balancing test easily falls in favor of the Plaintiff's speech.

(E)      <u>Causation -- A motivating or substantial factor</u>

The causation element of a 1983 First Amendment retaliation claim is <u>a substantial</u> **or** <u>a motivating factor</u>.  See, *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568 (1977). [Emphasis Supplied]. The causation element, as separated and distinguished from the *Monell* municipal liability consideration is separate and distinct. The *Mt. Healthy* causation requirement is easily satisfied for the purpose of defeating summary judgment by the direct evidence and inferences readily drawn from the circumstantial evidence presented in this pleading. The Plaintiff's adverse employment actions would almost certainly satisfy the more stringent "but for" or "sole motivating factor" analysis not relevant to this Court's consideration.

## VI.      MUNICIPAL LIABILITY UNDER 42 U.S.C. 1983

In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985) (Three justices concurring), the Supreme Court stated: "Because Congress intended that § 1983 be broadly

13

available to compensate individuals for violations of constitutional rights, see *Owen v. City of Independence*, 445 U.S. 622, 650–653, 100 S.Ct. 1398, 1415-1416 (1980); *Monell, supra*, at 683-687, a municipality could be held liable where a plaintiff could show that it was the city that was at fault for the damage suffered. To make this showing, a plaintiff must prove, in the broad causal language of the statute, that a policy or custom of the city "subjected" him, or "caused him to be subjected" to the deprivation of constitutional rights. *Id.* at 830.

The *Tuttle* Court continued: "Such misbehavior may in a given case be fairly attributable to various municipal policies or customs, either those that authorized the police officer so to act or those that did not authorize but nonetheless were the 'moving force,'" *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454 (1981), or cause of the violation. *Id. at 832.* A § 1983 cause of action is as available for the first victim of a policy or custom that would foreseeably and avoidably cause an individual to be subjected to deprivation of a constitutional right as it is for the second and subsequent victims; by exposing a municipal defendant to liability on the occurrence of the first incident, it is hoped that future incidents will not occur. *Id.* at 832 citing *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398 (1980).

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1298-1299 (1986), the Court stated: "No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body - whether or not that body had taken similar action in the past or intended to do so in the future - because even a single decision by such a body unquestionably constitutes an act of official government policy". "But the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level." *Id*. "***Monell's* language makes clear that it expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy**,"

14

*Monell,* at 694, **and whose decisions therefore may give rise to municipal liability under § 1983.**" *Id.* [Emphasis Supplied] Indeed, any other conclusion would be inconsistent with the principles underlying § 1983. To be sure, "official policy" often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. *Id.* at 480-481.

Section 1983 also refers to deprivations under color of a state "custom or usage," and the Court in *Monell* noted accordingly that "local governments, like every other § 1983 'person,' ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, at 690–691 and *Pembaur*, at FN10. **A § 1983 plaintiff thus may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state "custom or usage."** *Id.*

Authority to make municipal policy may be granted directly by a legislative enactment **or may be delegated by an official who possesses such authority**, and of course, whether an official had final policymaking authority is a question of state law. However, like other governmental entities, municipalities often spread policymaking authority among various officers and official bodies. As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances. It was held that municipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. See *Tuttle, supra*, at 823

("'policy' generally implies a course of action consciously chosen from among various alternatives"). *Id*. at 484.

In *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003), the Seventh Circuit stated: Thus, to establish a genuine question of fact as to whether these government entities were deliberately indifferent to Palmer's safety, Palmer is required to establish that the entities have a custom or policy that contributed to the infliction of the assault and his resulting injury." *Frake*, 210 F.3d at 781; *Garrison*, 165 F.3d at 571; see also *Butera*, 285 F.3d at 605 ("[I]f the Sheriff had notice of a substantial risk of serious harm to [plaintiff] ... through the general conditions at the Jail, and he devised no policies or devised inadequate policies to attempt to prevent the assault, he would be 'deliberately indifferent' and [plaintiff] would prevail."); *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). "[T]here must be a link between the policy and the constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427 (1985). *Palmer* at 595 further stated: "Unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority."

In *Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir. 1989), the First Circuit stated: "Following this teaching, courts have established two requirements for plaintiffs to meet in maintaining a § 1983 action grounded upon an unconstitutional municipal custom. First, the custom or practice

must be attributable to the municipality. In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. See *Spell v. McDaniel*, 824 F.2d 1380, 1386-88 (4th Cir. 1988); see also *Praprotnik*, at 925-926; *Tuttle*, at 818-820; *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir. 1985). Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights. See *Tuttle*, 471 U.S. at 819; *Monell*, 436 U.S. at 694–95; *Kibbe*, 777 F.2d at 809-10.

Constructive knowledge "may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of [their] official responsibilities the [municipal policymakers] should have known of them." *Spell v. McDaniel*, 824 F.2d at 1387; *Voutour*, 761 F.2d at 820; *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*); *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

The Causal Link. The Supreme Court has declared that to support liability under § 1983, a municipal custom must have been the "moving force" behind the plaintiff's injury. See *Tuttle*, 471 U.S. at 819; *Monell*, 436 U.S. at 694-95; *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454 (1981); *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). There must be some "affirmative link" between the municipal custom and the constitutional deprivation. See, *Tuttle*, at 824-25 & n. 8; *Kibbe*, 777 F.2d at 808; *Voutour*, at 819-820. [4]

---

[4] The use of [pre-policy] and post-[policy] evidence to show the existence of a policy or custom was expressly allowed by the Fifth Circuit in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985). Subsequent conduct may prove discriminatory motive in a prior employment decision, see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973), and subsequent acts may tend to prove the nature of a prior conspiracy, see *Anderson v. United States*, 417 U.S. 211, 219, 94 S.Ct. 2253, 2260 (1974), so the subsequent acceptance of recklessness by the policymaker tends to prove his preexisting disposition and policy. *Id*. at 171.

**Facts Requiring Denial of Summary Judgment**

The institutionalized and systemic illegal quota system of the Gretna Police Department has been so longstanding and widespread that is *de facto* the very custom, policy, practice and usage having the force and effect of law for the police department. The evidence shows clearly that "a purpose", as stated by the administration, of the punitive sanctions for non-fulfillment of the quota system was purely fiscal. The policymaker(s) of the Gretna Police Department certainly knew or should have known that such a system was in place and enforced, as it would be their duty as public officials to bear responsibility with respect to the finances of the police department. The Plaintiff respectfully submits that the evidence submitted is replete with material facts, which render summary judgment improper with regard to *Monell* municipal liability. (See, Statement of Facts at paragraphs 1, 2, 3, 4, 5, 7, 8, 9, 15, 16, 17 and 19).

It must be noted that there exists timely filed currently outstanding discovery responses due by the defendants which were calculated to reveal facts material to this very element of the plaintiff's 1983 claim. In particular, the Gretna Police Department budgets from 2010-2016; documents showing revenue generated and or collected from traffic tickets and/or citations for the years 2010-2016; and, the department the policy and procedure manual and employee handbook. Additionally, public records request have been currently unfulfilled.

---

Contrary to the defendant's contention, the Supreme Court's recent opinion in *City of St. Louis v. Praprotnik*, 108 S.Ct. 915, does not foreclose such use of post-event evidence. In *Praprotnik*, a plurality of the Justices determined that to be actionable under § 1983, a municipal policy or custom must have been adopted or acquiesced in by an actor with "'final policymaking authority.'" *Id*. at 924. The Court has never held that inferences about what customs or policies existed in a city before an event could not be drawn from subsequent actions.

## VII.   QUALIFIED IMMUNITY (INDIVIDUAL CAPACITY IMMUNITY)

Officials enjoy qualified immunity, in their individual capacity, to the extent that their conduct is objectively reasonable in light of clearly established law. *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (*en banc*); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). The Supreme Court noted in *Harlow* that in most cases, the "of which a reasonable person would have known" language in the qualified immunity standard does not add anything to the "clearly established law" requirement because "a reasonably competent public official should know the law governing his conduct." *Id*. at 818-819. Not long after *Harlow*, the Court refined the qualified immunity standard by defining "clearly established" in a way that encompasses the "objective reasonableness" inquiry: To be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 350; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). Thus, as this court has recognized, in light of the *Anderson* definition of "clearly established," the question "whether the ... right was clearly established at the time the defendant acted ... requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident." *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340 (5th Cir.2001).

*Warnock v. Pecos County, Texas*, 116 F.3d 776, 781-782 (5th Cir. 1997), held that state judges' decision not to reappoint the county auditor violated the First Amendment, that the relevant First Amendment law was clearly established when the judges made their decision in 1993, and that firing a county auditor for reporting violations of the law is objectively unreasonable. In *Frazier v. King*, 873 F.2d 820, 827 (5th Cir. 1989), the court denied qualified immunity to the warden of a state correctional center who fired a registered nurse in violation of her clearly

established right to report violations of nursing practices in the infirmary. See also *Thompson*, 901 F.2d at 468-470 (denying qualified immunity to police officials who terminated a police officer for filing written grievances related to the department's promotion policy and for making oral complaints about police misbehavior); *Harris*, 168 F.3d at 223-224 (denying qualified immunity to school superintendent for reprimanding two teachers who made critical remarks in 1995 about the school's principal and stating that "[t]he Defendants are not insulated from their unconstitutional conduct merely because a balancing test is involved in our [First Amendment] analysis"); 2 *Ivan E. Bodensteiner & Rosalie Berger Levinson, State & Local Government Civil Rights Liability* § 1A:05 n. 88 (2000) (citing cases from all circuits). *Id.* at 746.

In *Branton v. City of Dallas,* 272 F.3d 730 (5th Cir. 2001), the Court held that It is undisputed that, at the time the adverse employment action was taken, speech related to improper acts by public officers qualified as a matter of public concern. *Schultea v. Wood*, 27 F.3d 1112, 1120 (5th Cir. 1994) ("No reasonable public official in 1992 could have assumed that he could retaliate against an employee because of the employee's disclosure of instances of misconduct by a public official."), superseded on other grounds, 47 F.3d 1427 (1995)(*en banc*); see also *Benningfield*, 157 F.3d at 375–77; *Wilson*, 973 F.2d at 1270; *Thompson*, 901 F.2d at 463.

### Qualified Immunity Must Be Denied

The jurisprudence above is clearly on point with the facts presented in this matter. The plaintiff's speech regarding the existence of an unlawful quota system within the Gretna Police Department was clearly of significant public concern, protected by the guarantees of the First Amendment and a causal connection exists between the plaintiff's speech and the constitutional violation alleged. Therefore, in 2015 it would be *objectively unreasonable* for a public official with authority to reprimand, demote and terminate or credibly threaten to terminate a public

employee in retaliation for speech as set forth in this particular matter.  As such, the Plaintiff submits that qualified immunity raised in the defendant motion for summary judgment should be denied.

## VIII.   LA. R.S. 23:967 THE LOUISIANA WHISTLEBLOWER ACT OF 1997

La. R.S. 23 § 967, entitled: Employee protection from reprisal; prohibited practices; remedies, states in pertinent part:

A. An employer shall not take reprisal against an employee who in good faith, and after
   advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

C. For the purposes of this Section, the following terms shall have the definitions
   ascribed below:

(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section…

Genuine issues of material fact existed as to whether city-parish employer violated state law and whether employee's reassignment and written reprimands were in retaliation for disclosing suspected violations of state law, thus precluding summary judgment in favor of employer. *Odeh v. City of Baton Rouge/Parish of East Baton Rouge*, 191 F.Supp.3d 623 (M.D. La. 2016). Genuine issues of fact existed as to whether state university violated Louisiana's age discrimination statute in failing to promote employee, and whether employee was subject to retaliation as a result of her complaint, precluding summary judgment. *Mitchell v. University of Louisiana System*, 154

F.Supp.3d 364 (M.D. La. 2015). Genuine issue of material fact as to whether there was a causal connection between state university instructor's report to university officials of the misappropriation of student fees by various individuals at the school of art where she taught, including the school's director, and the subsequent decision of officials in the school not to renew her contract precluded summary judgment. *Herster v. Board of Supervisors of Louisiana State University*, 72 F.Supp.3d 627 (M.D. La. 2014)

**Material issue of fact as to whether police officers voluntarily resigned precluded summary judgment for police chief and city in police officers' action alleging violation of whistleblower statute and constructive discharge in retaliation for engaging in protected acts.** *Ray v. City of Bossier City*, 37,708 (La. App. 2d Cir. 10/24/03), 859 So.2d 264. Genuine issues of material fact as to whether former director of engineering's supervisor took furniture from employer with permission, as to credibility of director and human resources executive about whether director reported to executive that supervisor took furniture, and as to supervisor's intent when firing director precluded summary judgment for employer. *Danna v. Ritz-Carlton Hotel Co., LLC*, 15-0651 (La. App. 4th Cir. 5/11/16), 2016 WL 2736162.

### Facts Requiring Denial of Summary Judgment

The plaintiff was employed by the Gretna Police Department as a patrol officer from 2010 through 2015. (Statement of Facts at paragraphs 10, 11, 12, 13 and 14) The plaintiff has submitted evidence in this pleading that a quota system exists within the Gretna Police Department. (Statement of Facts at paragraphs 1, 5, 7, 8, 9, 13, 14 and 15) La. R.S. 40:2401.1 prohibits quotas for law enforcement officers. Plaintiff advised his employer that the imposition of a quota system was in direct contravention of Louisiana law. (Statement of Facts at paragraphs at 21, 22 and 24) The plaintiff informed his employer that he would not participate in this violation of state law.

22

(Statement of Facts at paragraphs 24 and 25)  Plaintiff further disclosed the unlawful quota system to law enforcement authorities within and outside his agency and department. (Statement of Facts at paragraphs 26 and 27)  The plaintiff's employer engaged in reprisal for the plaintiff's reporting and refusal to participate in the unlawful quota system. (Statement of Facts at paragraphs 29, 32, 33, 34, 35 and 40)

The Plaintiff respectfully submits that the defendants motion for summary judgment regarding his cause of action under the Louisiana Whistleblower Statute be **DENIED.**

## IX.    DUE PROCESS CLAIM – POLICE OFFICERS BILL OF RIGHTS

The Plaintiff respectfully submits that summary judgment is premature with regard to this claim.  As referenced hereinabove, outstanding discovery exists and the conclusion of discovery period has not yet expired.

However, out of an abundance of caution may the Court consider that the Defendant's argument and contention regarding summary judgment is misplaced.  A reading of the statute as a whole requires that a prerequisite to any discipline of a police officer strictly adhere to the procedures set forth in the statute.  Significantly, ANY deviation or failure to strictly adhere to the procedural safeguards set forth in the statute renders any action an absolute nullity.  The Plaintiff respectfully submits that many state law which have been determined to created constitutionally protected property interests protected by the due process clause of the 14th Amendment are much less comprehensive and more ambiguous that the Police Officers Bill of Rights.  Furthermore, consideration of this cause of action to undersigned counsel's knowledge may be res nova issue.

**[SPACE INTENTIONALLY LEFT BLANK]**

**X.    CONCLUSION**

The Plaintiff, Daniel Swear, prays that after due proceedings and consideration, that the

Defendants motion for summary judgment be ***DENIED*** and this matter proceed to a jury trial on

the merits.

Respectfully submitted,

**MOORE & HEBERT, APLC**

s/Corey J. Hebert
Charles R. Moore, La. Bar Roll No. 9604
Corey J. Hebert, La. Bar Roll No. 31773
6513 Perkins Road
Baton Rouge, Louisiana 70808
*Attorneys for the Plaintiff*

AND

s/Seth M. Dornier
Seth M. Dornier (La. Bar. #32804)
DORNIER LAW FIRM, LLC
16851 Jefferson Highway; Suit B-6
Baton Rouge, Louisiana 70817
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

**I HERBY CERTIFY** that the above and foregoing Opposition to Defendants' Summary Judgment in Case Number: 2:15-cv-06591 has been sent to counsel of record via the Court's CM/ECF system at the following address:

    Steven M. Mauterer

    Beevers & Beevers, LLP

    210 Huey P. Long Ave.

    Gretna, Louisiana 70053

    smauterer@beeverslaw.com

**DONE AND SIGNED** this 3rd day of October in Baton Rouge, Louisiana.

             /s/  Corey J. Hebert

             Corey J. Hebert